# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-2046
Filed April 15, 2026

———————————

**Michael James Shivers,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Webster County,
The Honorable Bethany J. Currie, Judge.

———————————

**AFFIRMED**

———————————

Steven J. Drahozal of the State Public Defender's Office,
Wrongful Convictions Unit, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

A gun battle between two groups gathered on opposite sides of a residential street in Fort Dodge ended with the deaths of two bystanders. *See State v. Shivers*, No. 22-0437, 2023 WL 6293844, at *1 (Iowa Ct. App. Sep. 27, 2023). Witnesses identified Michael Shivers as having fired the shot that sparked the battle, and he was convicted of two counts of second-degree murder. We affirmed his convictions on appeal, concluding there was "substantial evidence from which a jury could find, beyond a reasonable doubt, that Shivers' reliance on the defense of justification was unfounded." *Id.* at *4.

Shivers applied for postconviction relief, claiming that defense counsel was ineffective for advising him not to testify in support of his justification defense. He also claimed that counsel should have "pursue[d] a separate trial" on a third count—possession of a firearm by a prohibited person—even though that count was dismissed on counsel's motion for judgment of acquittal. Postconviction-relief counsel withdrew the separate-trial claim at the hearing on Shivers' application, and the district court rejected the other claim on its merits.

Shivers appeals, asserting the court erred in finding no breach of duty or prejudice on his right-to-testify claim. He also contends that postconviction-relief counsel provided ineffective assistance by "conceding the issue of criminal trial counsel's failure to pursue a separate trial" on the firearm-possession charge.

\*\*\*

Postconviction-relief proceedings are normally reviewed for the correction of errors at law. *See* Iowa R. App. P. 6.907; *Krogmann v. State*, 914

2

N.W.2d 293, 306 (Iowa 2018). But when the application raises a constitutional claim, such as ineffective assistance of counsel, we review the proceedings de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

To prevail on a claim of ineffective assistance of counsel, Shivers must establish that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

\*\*\*

At the criminal trial, defense counsel spoke with Shivers about his constitutional right to testify:

> COUNSEL: Just for the purposes of the record, we have called two different witnesses related to Mr. Shivers' defense. I believe Mr. Shivers is going to exercise his right to remain silent in this matter. I'm going to ask you a series of questions, okay, Mike? DEFENDANT: Uh-huh.
>
> COUNSEL: Michael, you know you have a constitutional right to testify if you so desire; correct? DEFENDANT: Correct.
>
> COUNSEL: You also know you have a right not to testify if you don't want to; correct? DEFENDANT: Correct.
>
> COUNSEL: You and I have had multiple conversations related to whether it would be beneficial for you to testify or not testify; correct? DEFENDANT: Correct.
>
> COUNSEL: I've informed you what the pros and cons of testifying and not testifying; correct? DEFENDANT: Correct.
>
> COUNSEL: I've been able to answer all your questions related to that particular issue; correct? DEFENDANT: Correct.

COUNSEL: I haven't threatened you to do one way or the other; correct? DEFENDANT: Correct.

COUNSEL: And is it your desire to remain silent and not testify; is that correct? DEFENDANT: Correct.

COUNSEL: And you're doing this of your own free will? DEFENDANT: Correct.

COUNSEL: Not under threats or promises or anything? DEFENDANT: Correct.

COUNSEL: And I think that's an adequate record for that, Judge?

COURT: I agree and just ask you myself, that is your decision and certainly your attorney can help you but you do acknowledge that is your decision? DEFENDANT: Correct.

At the postconviction-relief hearing, Shivers acknowledged that "[t]he colloquy was appropriate" and that he "waived his right to testify." But he argued defense counsel's advice about that decision was deficient because the justification defense required proof that "he had a genuine fear of imminent physical harm," and only Shivers could testify about his own state of mind. *See State v. Howard*, 14 N.W.3d 763, 767 (Iowa Ct. App. 2024) ("The [justification] defense is both subjective and objective.").

The district court disagreed, reasoning:

Advising a client not to testify despite raising the justification of self-defense may or may not be merely a mistaken trial strategy, as the defendant's state of mind must be presented to the jury in order for them to accept the justification. In this case, other witnesses testified to Mr. Shivers' statements reflecting his state of mind and they testified regarding the mood of the entire group, which supported Mr. Shivers' self-defense claim. Furthermore, [defense counsel] elicited information from Mr. Shivers during his colloquy that they had several conversations about testifying or not and the pros and cons of testifying. Both [defense counsel] and the trial judge confirmed with Mr. Shivers directly that the decision was his alone and he was not just doing what his lawyer told him

4

to do. Under the circumstances, the Court does not find that such advice is ineffective.

We agree with the court that Shivers failed to prove defense counsel performed deficiently.

"The decision whether or not to testify belongs to the defendant, and the role of counsel is to provide advice to enable a defendant to make the decision." *Ledezma v. State*, 626 N.W.2d 134, 146 (Iowa 2001); *see also State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) ("Trial counsel's role is simply to provide advice to the defendant to enable the accused to make a well-informed decision."). Shivers argues that counsel had a duty to advise him "about the subjective standard of his justification defense" and that counsel failed to perform that duty. But the district court did not find Shivers credible when he testified at the postconviction-relief hearing that he never discussed the defense with his attorney. And upon our de novo review, we too reject that allegation.

Shivers initially testified that defense counsel "came and seen me for the very first time in Humboldt County [Jail]." But later, Shivers maintained that he had no in-person meetings with counsel, which the court found "directly contradicted" his earlier testimony. In addition to that conflicting testimony, Shivers confirmed at the criminal trial that he had "multiple conversations" with counsel about testifying, that counsel informed him about "the pros and cons of testifying and not testifying," and that counsel was "able to answer all [his] questions related to that particular issue." *See Pena v. State*, No. 17-0474, 2018 WL 2084850, at *3 (Iowa Ct. App. May 2, 2018) (noting that "[w]hile we are generally skeptical of a [postconviction-relief] applicant's self-serving statements regarding trial, we are even more so when those statements are contradicted by a record made

5

contemporaneously at the time of trial." (internal citation omitted)). Given these inconsistencies, and mindful of the weight we owe the district court's credibility assessment, *see Sothman*, 967 N.W.2d at 522, we find no reason to doubt that Shivers was fully advised about the elements of his defense and the strategic impact of maintaining his right to silence. Nothing more is required under the routine circumstances present here. *Cf. Ledezma*, 626 N.W.2d at 147 ("Generally, the advice provided by counsel is a matter of trial strategy and will not support a claim of ineffective assistance absent exceptional circumstances.").

We also agree with the district court that Shivers' claim fails on the prejudice prong. The court found that even if defense counsel

> had advised him to testify, either Mr. Shivers might have elected not to testify anyway (as he indicated to his trial attorney and then to the judge that the decision not to testify was his own choice) or he might have testified but his testimony would have contradicted numerous other witnesses, including his own witnesses. The Court has no reason to believe that, if only Mr. Shivers had testified, the jury would have disregarded the overwhelming evidence that Mr. Shivers shot first and instead believed that he acted in self-defense or defense of another. If Mr. Shivers testified at the criminal trial as he did in the [postconviction-relief] trial, there is not a substantial likelihood that he would have been acquitted.
>
> The Court finds that Mr. Shivers has failed to prove that the result of the trial would have been different but for his attorney's advice not to testify. Despite not testifying, the Court still gave the justification jury instruction and the jury had the testimony of Mr. Shivers' other witnesses regarding the events of the evening. Mr. Shivers received the benefit of the jury considering his justification defense without the burden of being subject to cross-examination. Mr. Shivers has not met his burden of proving the prejudice prong under *Strickland*.

As we found on direct appeal, "three witnesses testified that they observed Shivers with the AR-15, and two of them stated that Shivers fired

6

the first shot." *Shivers*, 2023 WL 6293844, at *4 n.7. Shivers' testimony at the postconviction-relief hearing conflicted with those accounts and with the stories that he told law enforcement officials who were investigating the shooting. He did not tell officers at the scene anything about "being shot at" or "acting in self-defense." And when he was interviewed by a detective a few days later, he "said with 100 percent certainty he never had a gun" that night. But that story changed during an interview with a different detective. In that interview, Shivers admitted that he shot "three to four rounds" from "a .38 caliber revolver." He later "denied shooting the rifle, although he did talk about touching and holding" it earlier in the evening. By the postconviction-relief hearing, Shivers' story had shifted again. He testified that when he saw a group from across the street "coming towards us," he "reached down and grabbed that rifle that was in the back of the truck. And just as I was preparing to fire, someone else fired too."

"When the performance of counsel relates to the failure to present evidence, we must consider what bearing the evidence may have had on the outcome of the case." *Ledezma*, 626 N.W.2d at 148. Given Shivers' ever-changing story—and the testimony of other witnesses (including his own son) who saw him fire the first shot and described "tension" but no imminent threat from the group across the street—we find no reasonable probability that Shivers' testimony would have changed the outcome of the trial. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). A guilty verdict was the likely result whether or not Shivers' counsel would have advised him differently. We accordingly affirm the district court's denial of this claim.

\*\*\*

7

Along with the two counts of second-degree murder, Shivers was also charged with possession of a firearm by a prohibited person. The State did not offer any evidence about that charge, other than an exhibit documenting that Shivers had been convicted of domestic abuse assault. After the State rested its case, the trial court granted Shivers' motion for judgment of acquittal and withdrew the exhibit from the jury's consideration.

On postconviction relief, Shivers argued that defense counsel was ineffective for failing to "pursue a separate trial" on the firearm possession charge to "keep[] prior bad acts evidence out." But at the hearing on Shivers' application, postconviction-relief counsel withdrew that claim because he did not believe that he could satisfy the prejudice prong. Now, on appeal, Shivers claims postconviction-relief counsel "was ineffective for conceding" the issue.

The State urges us not to reach this issue because it was not decided by the district court. However, ineffective assistance is an exception to our normal error-preservation rules. *See Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018). And while we cannot decide ineffective-assistance claims on direct appeal from criminal proceedings, *see* Iowa Code § 814.7 (2024), we may do so in postconviction-relief proceedings, *Goode*, 920 N.W.2d at 526. "We exercise our review only 'when the appellate record is adequate' and 'when no prejudice would result to any party.'" *Chandler v. State*, No. 24-0399, 2025 WL 2237244, at *2 (Iowa Ct. App. Aug. 6, 2025) (quoting *Goode*, 920 N.W.2d at 526). Both conditions are satisfied here. But on the merits, Shivers' claim fails.

As the State points out, Shivers' appellate brief identifies only "a single mention of the judgment entry during the trial: when it was offered and admitted without objection." The exhibit was not displayed to the jury

8

when it was admitted, and it was not included among the exhibits submitted to the jury. No mention of the exhibit—or Shivers' domestic-abuse conviction—was made during any witness's testimony or the State's arguments to the jury. We agree with the State that "[t]here's no plausible view of the record where this single isolated reference to a prior judgment entry—withdrawn and not mentioned again—could have" impacted the outcome of the criminal trial. *See State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003) (considering whether the effect of trial counsel's claimed error was "pervasive or isolated and trivial" in examining the prejudice prong of an ineffective-assistance claim). As a result, Shivers failed to establish that he was prejudiced by postconviction-relief counsel's withdrawal of the issue.

**AFFIRMED.**